**SO ORDERED.**

**SIGNED this 25 day of March, 2022.**



_____
**David M. Warren
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 22-00101-5-DMW |
| STEPHEN BRADLEY HALFERTY | CHAPTER 13 |
| DEBTOR | |

## ORDER DENYING RELIEF FROM AUTOMATIC STAY

This matter comes on to be heard upon Creditor Ever-Seal, Inc.'s Emergency Motion for Entry of an Order Granting Relief from the Automatic Stay ("Motion for Relief from Stay") filed by Ever-Seal, Inc. ("Ever-Seal") on February 16, 2022 and the Debtor's Response to Motion for Relief from Stay of Ever-Seal, Inc. filed by Stephen Bradley Halferty ("Debtor") on February 22, 2022. The court conducted a hearing in Raleigh, North Carolina on February 23, 2022. Brian R. Anderson, Esq. appeared for Ever-Seal, and Travis Sasser, Esq. appeared for the Debtor. Based upon the pleadings, the arguments of counsel, the case record and the evidence presented, including the testimony of the Debtor for the limited purpose of explaining his relationship with Ever-Seal and his current business, DuraSeal, the court makes the following findings of fact and conclusions of law:

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the court has the authority to hear and determine the matter pursuant to 28 U.S.C. § 157(b)(1). The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

2. The Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on January 14, 2022.

3. Ever-Seal is a Tennessee corporation that provides permanent wood and concrete sealing as an authorized installer of a sealant product called Seal-It. The Debtor testified that he worked as an independent contractor for Ever-Seal from June 2020 until November 2021, when Ever-Seal asserts that it terminated its business relationship with the Debtor. The Debtor started work as an estimator but later rose to the level of sales manager.

4. The Debtor executed a Confidentiality Agreement ("Agreement") with Ever-Seal when he was hired in May 2020, before he began work in June 2020. The Agreement, governed by Tennessee state law, prohibits the Debtor from using, disclosing or disseminating confidential information or materials, including "operating procedures and results, customer information, information about technical, administrative, management, financial or other activities with respect to [Ever-Seal's] development program, distribution networks, software programs, marketing plans and strategies, strategic alliance or joint venture arrangements, trade secrets, know-how and ideas." The Agreement purports to apply to the Debtor during the period of the Debtor's "business opportunity" with Ever-Seal and the following two years thereafter. The Agreement also states that employees, contractors and associates of Ever-Seal may not "enter employment or contract with, nor advise, another company or business entity that is in direct or indirect competition with

Ever-Seal Inc. or any of its entities for the same two-year period" after "voluntary or involuntary termination of employment or contract."

5.  Ever-Seal asserts that the Debtor "formed, began operating, or otherwise began doing business as a company called DuraSeal around June 2021." Ever-Seal asserts that the Debtor "breached the Agreement both before and after his termination, and is continuing to breach the Agreement, by competing directly with Ever-Seal in at least North Carolina and South Carolina by way of his purported company DuraSeal, and by using Ever-Seal's confidential information to do so." The Debtor testified that DuraSeal sells and installs Seal-It in the same geographical market as his former Ever-Seal sales territory, plus the markets of Charlotte, North Carolina; Greenville, South Carolina and Tampa, Florida.

6.  Ever-Seal learned about the Debtor's business activities with DuraSeal in late December 2021 and early January 2022. The Debtor did not list Ever-Seal as a creditor when he filed his petition on January 14, 2022, and Ever-Seal did not receive notice of the Debtor's bankruptcy case. On February 8, 2022, Ever-Seal filed a Verified Complaint ("Complaint")[1] against the Debtor "d/b/a DuraSeal" in the United States District Court for the Middle District of Tennessee ("Tennessee Court"). Ever-Seal filed the Complaint with the assistance of local counsel located in Nashville, Tennessee and out-of-state counsel from Kansas City, Missouri. The Complaint asserts claims for breach of contract, breach of fiduciary duty and intentional interference with business relations.

7.  Ever-Seal also filed with the Tennessee Court a Motion seeking a temporary restraining order and preliminary injunction against the Debtor on February 8, 2022. In support

---

[1] Steve Nelson, Chief Executive Officer and Treasurer of Ever-Seal, verified the Complaint.

of that Motion, Ever-Seal filed a Declaration made by Tim Lucero, an Ever-Seal employee who briefly worked for DuraSeal before returning to work for Ever-Seal.

8.      On February 11, 2022, without the Debtor making any appearance in the case, the Tennessee Court entered a temporary restraining order against the Debtor and set a preliminary injunction hearing for February 22, 2022. Ever-Seal subsequently learned of the Debtor's bankruptcy case, and upon notice from Ever-Seal, the Tennessee Court stayed the action on February 15, 2022 consistent with 11 U.S.C. § 362(a)(1). Ever-Seal seeks relief from the automatic stay of § 362(a) to "prosecute" the matter before the Tennessee Court "to final judgment."[2]

9.      Pursuant to 11 U.S.C. § 362(d), "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under [§ 362](a) . . . , such as by terminating, annulling, modifying, or conditioning such stay . . . for cause . . . ." 11 U.S.C. § 362(d)(1). As noted by the Fourth Circuit Court of Appeals, the court "must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992) (citing *In re Peterson*, 116 B.R. 247, 249 (D. Colo. 1990)).

10.     Various factors must be examined by the court when there is pending litigation involving the debtor, including

> (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

*Id.* (citations omitted).

---

[2] The court is denying the relief requested by Ever-Seal, rendering unnecessary a determination whether the matter pending in the Tennessee Court is void *ab initio*, because it was filed in violation of the automatic stay.

11. The issues in the matter before the Tennessee Court involve state common law; however, neither the causes of action in the Complaint, nor the Motion for a temporary restraining order and preliminary injunction, requires intimate familiarity with Tennessee law.

12. Regarding judicial economy, this court has the ability to adjudicate expeditiously all of the matters at issue between the parties.[3] Even if the Tennessee Court also has the capacity to hear and adjudicate the Motion and Complaint in a timely manner, Ever-Seal asserts claims against the Debtor that, if successful, may qualify as nondischargeable under 11 U.S.C. § 523. It would be inefficient for the Tennessee Court to liquidate those claims, because Ever-Seal may ultimately be required to obtain a ruling from this court regarding the dischargeability of any judgment. In that situation, collateral estoppel may or may not prevent Ever-Seal from being forced to litigate certain dischargeability issues before this court. Judicial economy will best be served if this court adjudicates all matters between Ever-Seal and the Debtor.

13. The court also notes that Ever-Seal employed counsel from Missouri to represent it before the Tennessee Court, and no hardship would be imposed upon that counsel to require them to travel to North Carolina instead of Tennessee. Similarly, the Ever-Seal employee who signed the Declaration filed by Ever-Seal in the Tennessee Court presumably is located in either North Carolina, South Carolina or Florida, and not Tennessee, because he worked for DuraSeal, and those are DuraSeal's markets.

14. Lastly, the court finds that the Debtor's estate would not be protected properly by a requirement that Ever-Seal seek enforcement of any judgment through this court. As noted above, if the Tennessee Court liquidated the claims against the Debtor, it is possible the Debtor

---

[3] At the hearing, the court noted that Ever-Seal could bring its claims before this court by removing the matter from the Tennessee Court to this court. On March 17, 2022, Ever-Seal elected to file with this court a Verified Complaint and Motion seeking a preliminary injunction. That course of action accomplished the same objective while avoiding a potential finding that the matter before the Tennessee Court was void *ab initio*.

5

would still be forced to litigate certain issues before this court in conjunction with a subsequent action brought under § 523. That inefficiency could be detrimental to the Debtor's ability to generate funds to repay his creditors pursuant to a Chapter 13 Plan.

15. Under the circumstances of this case, no cause exists to lift the stay, and the Motion for Relief from Stay should be denied; now therefore,

It is ORDERED, ADJUDGED and DECREED that the Motion for Relief from Stay be, and hereby is, denied.

END OF DOCUMENT